**CENTRAL POWER AND LIGHT COM-PANY, Appellant,**

v.

**Geraldine HOLLOWAY et al., Appellees.**

**No. 379.**

Court of Civil Appeals of Texas.
Corpus Christi.

Aug. 29, 1968.

H. K. Howard, Fischer, Wood, Burney &
Nesbitt, Allen Wood, Corpus Christi, for
appellant.

W. T. McNeil, Edna, for appellees.

## OPINION

NYE, Justice.

Appellees brought suit to enjoin the re-
construction of a proposed new electric
transmission line across their property. On
a trial before the court without a jury the
appellant Central Power and Light Com-
pany was enjoined from installing on ap-
pellees' land under its easement, (1) any
poles taller than the existing ones, (2)
cables or wires at higher level than the
existing ones and (3) more than twelve
poles. From this judgment appellant per-
fects its appeal.

The appellees are owners of an undivided
interest in a 184 acre tract of land in Jack-
son County, Texas. In March, 1942 the
appellees joined the other owners of said
land in executing an easement for an elec-
tric transmission line over and across their
land. The instrument granted to appellant

"* * * an easement or right of way
for an electric transmission line, consist-
ing of variable numbers of wires, and all
necessary and desirable attachments and
appurtenances, including poles made of
wood, metal or other material, telephone
and telegraph wires, props, guys and an-

chorages, at or near the location and along the general course now located and staked out by said Central Power and Light Company, over, across and upon (describing the land) * * * Together with the right of ingress and egress over my (our) adjacent lands to or from said right of way for the purpose of *constructing, reconstructing,* inspecting, partolling, *hanging new wire on, maintaining* and *removing said line, poles, wires and appurtenances; the right to relocate along the same general direction of said line;* the right to remove from said lands all trees and parts thereof, or other obstructions which endanger or may interfere with the safety or efficiency of said line, or its appurtenances; and the right to exercise all other rights hereby granted." (emphasis supplied)

Pursuant to the provisions contained in such easement the utility company constructed an electric transmission line consisting of three conductor wires and two shield wires. The utility company now proposes to reconstruct the line by reducing the number of poles and extending the height of the line by approximately fifteen feet. All of the facts were stipulated to by the parties to this suit. Among the stipulations were that the utility company would install four new 2-pole structures (eight poles), instead of the original six 2-pole structures (twelve poles). It was further stipulated that upon completion of the reconstruction of the transmission line, the new line would be energized so that it would carry 138,000 volts. This is the same voltage that is now being carried under the existing facilities. Each 2-pole structure would be approximately 14½ feet apart. This is the same distance as the original existing poles. The center line of the new reconstructed electric transmission line would be at the same location as the line of the existing transmission line and would occupy the same right of way and the same width of right of way that is now occupied by the existing lines.

Appellant's first and second points are that the trial court erred in holding that under the terms of the easement the appellant did not have the right to install taller poles or the right to increase the height of the existing electric transmission line across appellees' land.

It is appellees' contention during the trial of the case, and again here on appeal: that, the easement granted to the utility company is general in nature; that the utility company in originally constructing its electric transmission line could have constructed the line in any manner allowed by the easement, however, once the line was constructed (as to height of poles and lines) the utility company's rights became fixed and certain and cannot now be changed. Appellees cite 17A Am.Jur. p. 721 and rely on Houston Pipe Line Company v. Dwyer, 374 S.W.2d 662 (Tex.Sup.1964).

Appellant contends that the Dwyer case, supra, is not controlling, because the easement granted this appellant in this case gave it rights in excess of the ones actually used. Citing Knox v. Pioneer Natural Gas Company, 321 S.W.2d 596 (Tex.Civ.App.— El Paso 1959, n. r. e.). In the Dwyer case the easement was general and the rights granted were narrow by the limitation of the grant which reads as follows:

"First Party * * * does hereby grant, sell and convey unto second party a right of way to lay, maintain, operate, repair ~~and remove~~ a Pipe Line for the transportation of gas. * * *" (The words "and remove" were struck out by the parties.)

The Court therefore held that once the grantee constructed its pipeline with the consent and acquiescence of the grantor, the extent of the grantor's easement rights thereby became fixed and certain. The Court went on to say that in Knox, supra, the agreement granted to the grantee the right to enter upon the land at all times for the purpose of making additions to, improvements on and repairs to said pipeline and the right to keep and maintain the same

and to remove or replace the same. No such rights as these were granted in the Dwyer case.

Our Court through Chief Justice Green in comparing the instrument before us at that time, to the instrument in the Dwyer case, said:

"* * * In our case, as will be noticed by comparison of the two instruments, grantee was given additional rights the omission of which in Dwyer was especially commented on in the opinion. Certainly the grant in the present case *does not evidence that it was the intent of the parties* that grantee or its assigns, in the laying of an additional pipe line would be limited to the eight inch size of the pipe first laid; indeed it expresses an intention quite to the contrary." citing cases. (emphasis supplied)

Strauch v. Coastal States Crude Gathering Co., 424 S.W.2d 677 (Tex.Civ.App.—Corpus Christi 1968).

In the present case before us, as was the case in Knox, supra, the grantors gave the utility company *the right to relocate the electric line.* The utility company's easement granted to the appellant in addition to the rights actually used, the right to reconstruct, to hang new wire on, maintain and remove the lines, poles, wires and appurtenances and the right to relocate them.

▆▆ Every easement necessarily carries with it the right to do such things as are reasonably necessary for the full enjoyment of the easement, and the extent to which incidental rights may be exercised depends on the object and purpose of the grants and whether such rights are limited by its terms. Phillips Petroleum Company v. Terrel, 404 S.W.2d 927 (Tex.Civ.App.—Amarillo 1966); Gulf View Courts v. Galveston County, 150 S.W.2d 872 (Tex. Civ.App.—Galveston 1941, wr.ref.); Bland Lake Fishing and Hunting Club v. Fisher, 311 S.W.2d 710 (Tex.Civ.App.—Beaumont 1958). Of course, it is elementary that it is the duty of the court in the construction

of instruments creating easements to give effect to the intention of the parties, and that the intention of the parties is to be determined by the language of the instrument. Kearney & Son v. Fancher, 401 S.W.2d 897 (Tex.Civ.App.—Ft. Worth 1966); Phillips Petroleum Company v. Lovell, 392 S.W.2d 748 (Tex.Civ.App.—Amarillo 1965); Strauch v. Coastal States Crude Gathering Co., supra; 28 C.J.S. Easements § 26, p. 680. In this connection it should be borne in mind that every provision of the easement is to be considered in arriving at its proper construction. 21 Tex.Jur.2d, p. 134 (and cases cited therein).

The Supreme Court of Illinois was called upon to construe an instrument which granted to an electric power company the right to erect a power line across a railroad right of way. The instrument in question was silent as to the distance above the surface of the earth within which the grantee power company could exercise its rights. The Court stated that such instrument must be given a reasonable construction. "* * It must be in accord with what the parties had in mind when the deed was made. * * *" The Court held that in construing the instrument, it could not be too restrictive; the height to which the easement extends where no dimensions are fixed by the instrument creating it, depends upon the facts in each case. Cleveland, C., C. & St. L. Ry. Co. v. Central Illinois Public Service Co., 380 Ill. 130, 43 N.E.2d 993 (Sup.Ct.Ill.1942).

▆▆ The present easement provided that the utility company had the right to relocate its electric transmission line along the same general direction as the existing line. Since the appellant company was expressly given the right to reconstruct its transmission line and to relocate it, we do not believe that the parties intended such a narrow construction or an unreasonable result, that would require the company to re-install its electric line at the exact same elevation where it was first placed. The grantors knew that

they were granting a right to the electric utility company which included multiple and variable numbers of wires, desirable attachments and appurtenances, including telephone and telegraph wires. By the terms of the easement itself it is evident that the parties were looking to the future, since future contingencies were provided for in the instrument. See Knox v. Pioneer Natural Gas Company, supra.

The right to relocate would not be limited to a relocation horizontally along the same general direction but also the right to relocate vertically as well. The San Antonio Court of Civil Appeals in Lower Nueces River Water Supply District v. Live Oak County, 312 S.W.2d 696 (Tex.Civ.App. —San Antonio 1958), in discussing the authority of the Commissioners Court to *"change"* a road, said "* * * We do not find it necessary to consider the matter of the *location* of the changed route, * * * *"* (emphasis supplied). This language was used in a controversy over whether a statute which authorized a road to be changed authorized a vertical change or relocation. In another appeal of the same case, Tex. Civ.App., 352 S.W.2d 139, Chief Justice Murray, writing for the Court equated "location" with "change" by saying: "Art. 7585, Vernon's Ann.Civ.Stats., makes it the duty of the Commissioners' Court of the County to *re-locate* a road that is to become a part of a reservoir or lake when a water district completes its dam. * * * *"* The statute actually said "change". This Court in considering another aspect of the same case in Live Oak County v. Lower Nueces River Water Supply District, 396 S.W.2d 450 (Tex.Civ.App.—Corpus Christi 1965, n. r. e.), held that a change in location of roadway was not limited to a horizontal change but could include a vertical change as well. Our Supreme Court pointed out in the Dwyer case, supra, as it had before in Big Three Welding Equipment Co., Inc. v. Crutcher, Rolfs, Cummings, Inc., 149 Tex. 204, 229 S.W.2d 600 (1950), that certain terms in an easement should be given their "ordinary, usual" meanings so that they would not compel an unreasonable result. We hold that the terms "reconstruction" and "relocate" as used in this instrument are at least broad enough to include the right to increase the height of the poles and wire upon the reconstruction of the electric transmission line. Appellant's points one and two are sustained.

The easement specifically provides that "not more than Twelve (12) poles * * * shall be erected along the course of said line upon the above described land." This agreement protects the landowners in the future. The utility company filed sworn pleadings to the effect that it would not be necessary for them to erect any more than twelve poles during the reconstruction of the line. The landowners themselves produced no testimony concerning the threatened installation of more than twelve poles. Even though the case was tried on stipulated facts, there was no stipulation that more than twelve poles would be used in the reconstruction of the electric transmission line. Therefore, the judgment which enjoins appellant from installing more than twelve poles is not supported by the evidence, and is probably not necessary anyway according to the easement agreement, the pleadings and statements of the attorneys made in open court. For this reason that portion of the judgment cannot be affirmed.

The judgment of the trial court is reversed and rendered.